**Jose Jacobo AMAYA–RUIZ, Petitioner,**

v.

**Terry STEWART, et al., Respondents.**

**No. CV–00–722–TUC–WDB.**

United States District Court,
D. Arizona.

March 16, 2001.

---

1016

zona failed to provide Petitioner adequate procedures to litigate the issue of restored competency. The Court therefore directs that Petitioner's scheduled. execution be stayed pending a federal evidentiary hearing on his mental fitness for execution.

## BACKGROUND

Ken Murray, Jason Hawkins, Federal Public Defender's Office, Phoenix, AZ, Fredric F Kay, Federal Public Defender, Tucson, AZ, Carla G Ryan, Law Office of Carla G Ryan, Tucson, AZ, Julie Singleton Hall, Tucson, AZ, for petitioner.

Jon George Anderson, Office of the Attorney General, Criminal Appeals Section, Phoenix, AZ, for respondents.

## ORDER FOR STAY OF EXECUTION

BROWNING, Senior District Judge.

Petitioner Jose Jacobo Amaya–Ruiz is a state prisoner under sentence of death scheduled to be executed by the State of Arizona on January 18, 2001. He petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition raises one claim: Whether Petitioner lacks the requisite mental competency for execution under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The petition also requests a stay of execution and an evidentiary hearing. Respondents oppose the petition and motions, arguing that Petitioner's claims are procedurally barred, not properly exhausted, and without merit.

This matter raises an important issue of first impression—whether a prisoner who has been found by a state court to be incompetent for execution is entitled to at least the same procedural protections guaranteed by *Ford* when the State seeks to determine restoration of competency. As explained below, the Court answers this question affirmatively and finds that Ari-

The facts of the 1985 murder for which Petitioner was convicted and sentenced to death are set forth in the Arizona Supreme Court's published appellate opinion. *See State v. Amaya–Ruiz*, 166 Ariz. 152, 159–60, 800 P.2d 1260, 1267–68 (1990), *cert. denied*, 500 U.S. 929, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). Following unsuccessful appeal and post-conviction proceedings in state court, Petitioner sought federal habeas corpus relief. With the exception of Petitioner's claimed incompetency for execution ("*Ford* claim"), this Court denied the petition, finding the claims either meritless or procedurally barred. The *Ford* claim was dismissed without prejudice as premature because there was no pending warrant of execution. *See Amaya–Ruiz v. Lewis*, No. CV–91–606–TUC–WDB, slip op. at 65 (D.Ariz. May 28, 1996). On appeal, the Ninth Circuit Court of Appeals affirmed, and the U.S. Supreme Court denied certiorari. *Amaya–Ruiz v. Stewart*, 121 F.3d 486 (9th Cir.1997), *cert. denied*, 522 U.S. 1130, 118 S.Ct. 1083, 140 L.Ed.2d 140 (1998).

On May 12, 1998, having "good reason to believe that the prisoner may be mentally incompetent to be executed," the State of Arizona filed a motion in the Pinal County Superior Court for a competency examination of Petitioner. *See* Ariz.Rev.Stat.Ann. § 13–4022(A) (West Supp.2000). The State attached to this motion a copy of a memorandum dated April 23, 1998, which was prepared by Dr. P.A. McCauley, Mental Health Program Manager at the Ari-

zona Department of Corrections. The memo reads:

> At the present time Inmate Amaya–Ruiz is diagnosed with Schizophrenia. He has been under mental health care continuously over the past 3–4 years and intermittently previous to that. He was hospitalized at Baker Ward in 1995, and his mental health condition has not changed significantly over the past several years. His behavior remains bizarre, he is generally unresponsive to verbal interactions, his hygiene is poor and cognitive ability is limited. In the past year, Inmate Amaya–Ruiz was involuntarily medicated per Department Order 1103. His condition improved slightly with respect to his daily hygiene, and his mood improved with some improvement also in interpersonal interactions.
>
> His current mental status is decompensated with little or no verbal interactions. He does not appear oriented to person, place or time, much of the time. I do not believe he is capable of understanding the issues related to execution and his treatment team concurs.
>
> As he has shown some slight improvement when forcibly medicated, there is a possibility that he might be restored to competency with further treatment. However, I consider his general prognosis poor.

(S.C.R.doc. 91, Ex. A).[1] The State also notified the Arizona Supreme Court that, pending outcome of any competency hearing, it did not intend to seek a warrant of execution. (S.C.R.doc. 91).

On June 5, 1998, the superior court found reasonable grounds for the requested examination of Petitioner. Following nomination by the parties, the superior court appointed two psychiatrists. Dr. García–Buñuel met with Petitioner on March 12, 1999. In a letter to the court, Dr. García–Buñuel opined that as of the date of his examination Petitioner was not competent to be executed. "He does suffer from either a schizophrenic or Bipolar Disorder, either of which may fluctuate from near normalcy to the depths of 'crazy' behaviors." (S.C.R. doc. 92, Garcia Report at 5). Dr. Barry Morenz evaluated Petitioner on March 24, 1999, and diagnosed schizophrenia (in partial remission with use of anti-psychotic medications). Dr. Morenz noted that Petitioner "has suffered from bizarre behavior including smearing feces, drinking urine, and sudden unprovoked aggressiveness both towards himself and others over a period of several years." (S.C.R. doc. 92, Morenz Report at 5). He opined that Petitioner is incompetent for execution: "His understanding of his situation and current circumstances is illogical, paradoxical, and probably delusional. He does not appear to understand that he is sentenced to death for the crime of murder and that the impending punishment he is facing is death." (*Id.*)

Upon receipt of the written reports, counsel for both parties stipulated that the issue of Petitioner's competency be submitted to the superior court for determination based solely upon the reports. Subsequently, by order dated July 1, 1999, the superior court entered a finding of incompetency pursuant to A.R.S. § 13–4021, which defines "mentally incompetent to be executed" as "due to a mental disease or defect a person who is sentenced to death is presently unaware that he is to be punished for the crime of murder or that he is unaware that the impending punishment for that crime is death." (S.C.R.doc. 92).

---

1. "S.C.R." refers to the state court record, a copy of which has been docketed in this Court's file as document no. 8. The Court is grateful to the Clerk of the Arizona Supreme Court for providing a copy of that court's record in an expeditious manner.

At some point following the determination of incompetency, Petitioner was transferred from death row at Special Management Unit II in Florence to the Department of Corrections psychiatric hospital in Phoenix. *See* A.R.S. § 13–4022(G). After a number of treatment sessions, Dr. Jerry Dennis, Chief Medical Officer of the Arizona State Hospital, reported to the state courts that, as of August 21, 2000, Petitioner was competent for the purpose of execution and suffered from no mental illness. (S.C.R. doc. 93, Dennis Letter at 5). Consequently, the State of Arizona filed a motion asking the Arizona Supreme Court to issue a warrant of execution pursuant to A.R.S. § 13–4023(B), which directs the supreme court to issue a new warrant once the chief medical officer of the state hospital certifies that a prisoner has recovered competency.

Following issuance of Dr. Dennis's report, the Pinal County Superior Court also set the matter for review. The parties filed memoranda regarding operation of the competency statute and defense counsel filed a number of motions, including requests for discovery, appointment of an investigator and experts, and an evidentiary hearing. The State argued that A.R.S. § 13–4023(B) divested the superior court of jurisdiction and urged that the proceedings be terminated. Petitioner countered that application of the recovery statute in such a manner would violate his right to due process. On October 5, 2000, without analysis or discussion of Petitioner's constitutional claim, the superior court summarily found that issuance of the chief medical officer's certification of competency divested it of jurisdiction. The court therefore denied Petitioner's motions, noting that "further relief, if appropriate, be sought as provided by law in A.R.S. § 13–4021, et sequiter, and particularly, A.R.S. § 13–4024(C)," which governs the filing of successive requests for determination of competency. (S.C.R. doc. 98, M.E. 10/4/00 at 2).

Petitioner filed a notice of appeal to the Arizona Supreme Court. He also re-raised his constitutional argument in opposing the motion for warrant. (S.C.R. doc. 95, at 19). On December 12, 2000, the supreme court dismissed Petitioner's appeal and granted the State's motion, issuing a warrant of execution for January 18, 2001. In doing so, the court stated that it has "considered the defendant's current mental condition under statutory standards required for competency to be executed and concludes, on the record before us, that all requisite standards are fully satisfied." (S.C.R. doc. 102, at 1). The court did not address Petitioner's constitutional argument but did note that in the event of a "substantial change" in Petitioner's mental health, "he is not foreclosed from filing a further motion in the superior court pursuant to A.R.S. § 13–4024(C), accompanied by the requisite medical affidavit setting forth the nature and extent of the changed circumstances." (*Id.*) Two of the five Arizona Supreme Court justices dissented. In their opinion, the failure of the competency statute to provide for a hearing at which Petitioner could protest the propriety and accuracy of the state hospital director's certification of competency violated Petitioner's right to due process. (*Id.* at 3).

Three days later, on December 15, 2000, the State filed a motion in the Pinal County Superior Court for an examination and hearing on Petitioner's competency to be executed. (Response to Petition, Ex. G). The motion requested that the hearing take place on January 8, 2001, and nominated an expert to examine Petitioner. Defense counsel subsequently filed a motion to dismiss, arguing that the State had failed to comply with A.R.S. § 13–4024(C), which requires that an affidavit from a

licensed physician or psychologist establishing "a substantial change of circumstances" accompany a motion for successive competency examination. (Response to Petition, Ex. H at 3). Defense counsel also agreed to stipulate to Petitioner's incompetency in light of language in A.R.S. § 13–4022 suggesting that the party seeking a competency hearing has "good reason" to believe a prisoner may be mentally incompetent. (*Id.* at 2). On December 26, 2000, the superior court denied the State's motion for competency examination, noting that it previously ruled, at the request of the State, that it had lost jurisdiction upon certification of competency by the chief medical officer of the state hospital. (Response to Petition, Ex. I). The court further stated that the motion for competency had not been properly brought and that the parties must follow the procedures under A.R.S. § 13–4024 for any questions relating to Petitioner's competency. (Response to Petition, Ex. I).

On December 21, 2000, Petitioner's state-court counsel initiated the present proceedings by filing a motion for appointment of counsel. Counsel also filed a motion for funds for an interpreter, investigator, travel, and mental health experts, and a motion for discovery of mental health records. On December 29, 2000, counsel filed the instant habeas petition and moved for a stay of execution and an evidentiary hearing.

## ANALYSIS

### I. Applicability of the AEDPA

■ Neither of the parties disputes this Court's jurisdiction. Petitioner raised a *Ford* claim in his initial habeas petition, and it was dismissed without prejudice as premature. Pursuant to the Supreme Court's declaration in *Stewart v. Martinez–Villareal,* the present petition is not a "second or successive" application within the meaning of 28 U.S.C. § 2244(b), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 523 U.S. 637, 643, 118 S.Ct. 1618, 1621, 140 L.Ed.2d 849 (1998) ("This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b)."). The Court therefore has jurisdiction over this matter.

■ Although not barred by the successive petition prohibition of the AEDPA, Respondents assert that the instant petition is nonetheless a "new" application filed after the AEDPA's April 24, 1996 effective date and is thus governed by the statute's other amendments to habeas law. *See Graham v. Johnson,* 168 F.3d 762, 777–78 (5th Cir.1999), *cert. denied,* 529 U.S. 1097, 120 S.Ct. 1830, 146 L.Ed.2d 774 (2000) (rejecting argument that Supreme Court in *Stewart v. Martinez–Villareal* treated new petition as continuance of first so as to preclude application of other AEDPA provisions). Ordinarily, when a petition is dismissed without prejudice, the action is terminated and the law in effect when the petitioner later returns to federal court governs the proceedings. *Henry v. Lungren,* 164 F.3d 1240, 1241 (9th Cir.), *cert. denied,* 528 U.S. 963, 120 S.Ct. 397, 145 L.Ed.2d 309 (1999) ("The district court's dismissal of Henry's original petition for failure to exhaust state remedies 'terminated the litigation' "); *see also Mancuso v. Herbert,* 166 F.3d 97, 101 (2d Cir.), *cert. denied,* 527 U.S. 1026, 119 S.Ct. 2376, 144 L.Ed.2d 779 (1999) ("We conclude that the AEDPA applies to a habeas petition filed after the AEDPA's effective date, regardless of when the petitioner filed his or her initial habeas petition and regardless of the grounds for dismissal of such earlier petition.").

In *Henry v. Lungren*, the Ninth Circuit explicitly held that the filing of a second habeas petition, following dismissal without prejudice of a first petition, does not relate back to the date of the first petition under Rule 15(c)(2) of the Federal Rules of Civil Procedure. 164 F.3d at 1241; *accord Green v. White*, 223 F.3d 1001, 1003 (9th Cir.2000); *Van Tran v. Lindsey*, 212 F.3d 1143, 1148 (9th Cir.), *cert. denied*, —— U.S. ——, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). *But see Anthony v. Cambra*, 236 F.3d 568 (9th Cir.2000) (finding no abuse of discretion where district court allowed resubmitted petition to relate back to filing date of initial petition dismissed erroneously without leave to amend). In this case, however, it was not an unexhausted petition which was dismissed without prejudice, but simply an unripe claim raised in a fully exhausted petition. In any event, the Court need not determine at this time whether the AEDPA governs because even under the AEDPA, the Court finds that Petitioner is entitled to an evidentiary hearing.

## II. Procedures for Determining Competency for Execution

### A. Ford v. Wainwright

The controlling Supreme Court authority in this matter is the plurality decision in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Although there was no majority opinion, five justices agreed that the Eighth Amendment prohibits a state from executing an insane prisoner. Justice Powell, in a concurring opinion, defined this right as forbidding the execution of "those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* at 422, 106 S.Ct. at 2608 (Powell, J., concurring); *see also Penry v. Lynaugh*, 492 U.S. 302, 333, 109 S.Ct. 2934, 2954, 106 L.Ed.2d 256 (1989) (citing Justice Powell's formulation as the *Ford* standard). Fed-

eral and state courts generally agree that Justice Powell's concurring opinion sets forth the applicable constitutional standard. *See, e.g., Garrett v. Collins*, 951 F.2d 57, 58–59 (5th Cir.1992); *Rector v. Clark*, 923 F.2d 570, 572 (8th Cir.1991); *Berry v. State*, 703 So.2d 269, 293 (Miss. 1997). Less clear, however, is the issue of what state procedures are adequate for addressing a competency-to-be-executed claim.

In *Ford*, the Governor of Florida was responsible for deciding a prisoner's competency to be executed. 477 U.S. at 412–13, 106 S.Ct. at 2603. Pursuant to statutory procedures, the Governor appointed a panel of three psychiatrists, who together interviewed the prisoner for approximately 30 minutes. *Id.* The prisoner's attorneys were not given an opportunity to present any material for the Governor to consider in making a competency determination, and the Governor subsequently signed a death warrant without explanation or statement. *Id.*

Writing for himself and three other justices, Justice Marshall identified three fundamental defects in Florida's procedures. First, the state failed to provide the prisoner an opportunity to be heard. *Id.* at 413, 106 S.Ct. at 2603. "[A]ny procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate." *Id.* at 414, 106 S.Ct. at 2604. Second, the Florida procedure failed to provide any opportunity to challenge or impeach the state-appointed psychiatrists' opinions. "Without some questioning of the experts concerning their technical conclusions, a factfinder simply cannot be expected to evaluate the various opinions. . . ." *Id.* at 415, 106 S.Ct. at 2604. Third, Florida's placement of the competency decision wholly within the executive

branch entrusted the prisoner's constitutional right "to the unreviewable discretion of an administrative tribunal." *Id.* at 416, 106 S.Ct. at 2605. "The commander of the State's corps of prosecutors cannot be said to have the neutrality that is necessary for reliability in the factfinding proceeding." *Id.* In sum, Justice Marshall concluded that Florida's procedures were inadequate to preclude federal determination of the prisoner's competency for execution.[2]

Writing separately, Justice Powell concurred that the prisoner in *Ford* was entitled to a federal evidentiary hearing, but disagreed with Justice Marshall on the extent of procedures a state must employ to avoid the necessity of federal review. Justice Powell determined that in evaluating a competency-to-be-executed claim, a state need only comply with the Due Process Clause, which requires that a prisoner be provided a "fair hearing." *Ford,* 477 U.S. at 424, 106 S.Ct. at 2609; *see also Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), *overruled in part Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Because Justice Powell concurred in the judgment on the most narrow grounds, this Court looks to that opinion to ascertain the Court's holding on the issue of adequate procedures. *See Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest

grounds....'") (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)).

In assessing the requirements of due process, Justice Powell noted that it is a "flexible concept, requiring only 'such procedural protections as the particular situation demands.'" *Id.* at 425, 106 S.Ct. at 2609 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). In the context of competency for execution, the claim arises only after a prisoner has been convicted and sentenced to death. At this point, the State has a substantial and legitimate interest in carrying out the petitioner's sentence as punishment for his crime. The heightened procedural requirements imposed by the Supreme Court on capital trials and sentencing proceedings are therefore not applicable. *Ford,* 477 U.S. at 425, 106 S.Ct. at 2609–10. Although declining to determine the precise limits due process imposes in the competency-to-be-executed area, Justice Powell opined that a constitutionally acceptable procedure may be far less formal than a trial:

> The State should provide an impartial officer or board that can receive evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination. Beyond these basic requirements, the States should have substantial leeway to determine what process best balances the various interests at stake. As long as basic fairness is observed, I would find due process satisfied, and would apply

2. In discussing adequate procedures, Justice Marshall recognized that a "full trial on the issue of sanity" may not be necessary:

> [W]e leave to the State the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences. It may be that some high threshold showing on behalf of the prisoner

will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity. Other legitimate pragmatic considerations may also supply the boundaries of the procedural safeguards that feasibly can be provided.

477 U.S. at 416–17, 106 S.Ct. at 2605 (internal citations and footnote omitted).

the presumption of correctness of § 2254(d) on federal habeas corpus. 477 U.S. at 427, 106 S.Ct. at 2610.

Although dissenting from the majority's finding that the Eighth Amendment creates a substantive right not to be executed, Justice O'Connor, with whom Justice White joined, agreed that Florida's state-created entitlement to avoid execution while insane triggered the demands of the Due Process Clause. *Id.* at 427, 106 S.Ct. at 2611. Justice O'Connor also recognized that "once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly." *Id.* at 429, 106 S.Ct. at 2612. In her view, although the Due Process Clause imposes few requirements on pre-execution competency claims, at a minimum the state must provide an opportunity to be heard. "While I would not invariably require oral advocacy or even cross-examination, due process at the very least requires that the decisionmaker consider the prisoner's written submissions." *Id.* at 430, 106 S.Ct. at 2612.

### B. Arizona's Procedures

In Arizona, the statutes dealing with competency for execution were revised in 1993 in response to the *Ford* decision and amended again in 1999. Arizona Revised Statute § 13–4021(A) prohibits the .execution of a condemned person if the person is mentally incompetent to be executed. Subsection (B) follows Justice Powell's *Ford* formulation: being unaware, due to mental disease or defect, that one is to be punished for the crime of murder or that the impending punishment for that crime is death. A.R.S. § 13–4021(B). The procedures utilized in determining competen-

cy are set forth in § 13–4022. Specifically, the statute provides for appointment of experts, a judicial hearing, opportunity for submission of evidence by both parties, the right of cross-examination of witnesses, specific findings by the trial court hearing the matter, and an opportunity for judicial appellate review. A.R.S. § 13–4022(C), (E), (G), & (I). A prisoner sentenced to death is presumed competent for execution and may be found incompetent to be executed only on clear and convincing evidence. A.R.S. § 13–4022(F).

Where, as in this case, a prisoner is found to be incompetent, the prisoner is transferred to a treatment facility. A.R.S. § 13–4022(G). The state department of health services is responsible for providing competency restoration treatment, including prescribing medication. A.R.S. § 13–4022(H). Upon belief that the prisoner is competent to be executed, the person who supervises the prisoner's treatment must write a report to the court, attorney general, and the prisoner's attorney identifying each mental health expert who examined the prisoner; describing the nature, content, extent and results of the examination and any tests conducted as well as the facts on which findings are based; and expressing an opinion as to the prisoner's competency to be executed. *Id.* In a separate statute, titled "Recovery of competency," the chief medical officer of the state hospital is directed to, every sixty days, "file with the superior court a report setting forth the treatment being provided, the status of the prisoner and the prognosis as to when the prisoner will be competent." A.R.S. § 13–4023(A). If the chief medical officer certifies that a prisoner has recovered competency, Arizona's statutes provide for automatic issuance of a new warrant of execution. A.R.S. § 13–4023(B).[3]

---

**3.** A.R.S. § 13–4023(B) reads:

After a prisoner recovers competency to be executed, the chief medical officer of the state hospital shall certify to the Arizona

supreme court that the prisoner is competent. The Arizona supreme court shall order that the execution be conducted according to the original warrant, if unexpired, or

Under Arizona's statutory scheme, once a prisoner is declared competent for execution by the chief medical officer of the state hospital, he may receive a hearing before the superior court only by filing a successive motion for a competency hearing. *See* A.R.S. § 13–4024(C). An affidavit from an Arizona state-licensed physician or psychologist who has actually examined the prisoner must accompany the successive motion. *Id.* Furthermore, the affidavit must show "a substantial change of circumstances since the previous motion for hearing was denied or the prior determination of competency was made" and raise a significant question about the prisoner's competency to be executed. *Id.* If the motion is filed less than twenty days prior to a scheduled execution, the prisoner must also include a statement establishing good cause for the failure to file the motion in a timely manner and the expert's affidavit must opine that Petitioner is, in fact, incompetent for execution. A.R.S. § 13–4024(A).

## III. Adequacy of Arizona's Procedures

In the instant habeas petition, Petitioner asserts that he is not presently competent for execution. The petition further alleges that Arizona's procedures for declaring Petitioner competent for execution are constitutionally flawed. Specifically, Petitioner faults the statute's failure to permit input from the condemned or his counsel concerning the determination that competency has been restored, the absence of any method to clarify or challenge a certification of restored competency, the non-neutrality of the state's chief medical officer, and the absence of court findings regarding competency restoration. (Petition at 41–42). Petitioner also argues that because there was no "full and fair" state court hearing regarding the chief medical officer's certification, there are no findings

of fact on which this Court can rely and therefore this Court must hold its own evidentiary hearing on his competency for execution.

Respondents argue that because Petitioner can file a motion for determination of competency under the successive application provision of A.R.S. § 13–4024(C), Arizona's statutory scheme passes muster under *Ford v. Wainwright.* (Response to Petition, at 23). They also attempt to differentiate *Ford* by asserting that the chief medical officer's certification is filed with the Arizona Supreme Court. Therefore, the competency "decision" rests with a neutral judiciary rather than Arizona's executive branch, and Petitioner had an opportunity to present contrary evidence and argument to the Arizona Supreme Court in opposing the motion for a warrant of execution. The Court finds Respondents' arguments unpersuasive.

### A. Due Process Requirements

Under traditional notions of due process, the adequacy of state procedures is directly linked to the circumstances and interests at stake. In *Ford,* although the Court reached no uniform agreement on the particular procedural requirements mandated by due process, a majority of justices did hold that due process demands a hearing at least once the prisoner has made some "threshold showing" that he has become insane after trial. *Ford v. Wainwright,* 477 U.S. at 426, 106 S.Ct. at 2610 (Powell, J., concurring). The requirement of a threshold showing is based primarily on the fact that in order to be convicted and sentenced, the prisoner must have been judged competent to stand trial and found by the jury to be sane at the time the offense was committed. Requiring a threshold showing (and thereby presuming a Petitioner competent for execution) be-

---

shall issue a new warrant appointing a time    for execution of the judgment.

fore the right to a hearing is triggered balances the competing interests—Petitioner's right not to be executed while insane, and the State's right in carrying out the punishment for Petitioner's crime and interest in minimizing the risk of false claims and deliberate delay. *Id.* at 425–26, 106 S.Ct. at 2610 (Powell, J., concurring).

■ Once a prisoner overcomes the presumption of competency and is found to be incompetent, however, it appears to this Court that the prisoner's interest in avoiding an erroneous determination of when he is to be executed becomes even greater. Accordingly, the demands of due process necessarily increase to afford adequate protection to the prisoners' heightened interests. It is with this principle in mind that the Court finds Arizona's procedures for determining recovery of competency to be inadequate.[4]

Under Arizona's statutory scheme, the decision about when and if a prisoner has recovered competency for execution rests entirely with the chief medical officer of the state hospital. A.R.S. § 13–4023(B). Once that officer unilaterally "certifies" competency, the statute divests the lower courts of jurisdiction and mandates that the Arizona Supreme Court issue a new warrant of execution. Respondents' argument that the supreme court serves as a "barrier" (Response to Petition, at 23) between certification and execution is belied by the language of the statute itself. Indeed, Respondents themselves argued this point to the supreme court in filing their motion for issuance of an execution warrant:

> After the Chief Medical Officer of the Arizona State Hospital certifies to this Court that a prisoner is competent to be executed, this Court "shall issue a new warrant appointing a time for execution

of judgment." A.R.S. § 13–4023(B). A.R.S. § 13–706(A) provides:

> After a conviction and sentence of death are affirmed and the first post-conviction relief proceedings have been concluded, the supreme court shall issue a warrant of execution that authorizes the director of the state department of corrections to carry out the execution thirty-five days after the supreme court's mandate or order denying review or upon motion by the state. The supreme court shall grant subsequent warrants of execution on a motion by the state. The time for execution shall be fixed for thirty-five days after the state's motion is granted.

> *In comparing the above statute, it appears that A.R.S. § 13–4023, the more specific statutes, applies; and under that statute it is not necessary for the State to file a motion requesting a warrant.* Rather, this Court issues an execution warrant upon the certification of competency by the Arizona State Hospital.

(S.C.R. doc. 94, at 2; emphasis added).

It is clear from the face of Arizona's statutory scheme, that a prisoner found incompetent by a superior court judge and then later declared competent by the state hospital has no direct method of challenging the state officer's determination. The statutes do not provide for a hearing before a judge to determine sufficiency or reliability of the hospital's evaluation or for new judicial findings of fact regarding the Petitioner's competency for execution. Nor do the statutes provide for the appointment of defense experts to examine the prisoner, a hearing at which to present any evidence which may contradict the hospital's report, or a right to appeal the certifi-

---

4. The Court notes, however, that even if a prisoner such as Petitioner is not entitled to increased due process protection, Arizona's recovery procedures are inadequate even under the minimal requirements embraced by Justice Powell in *Ford*.

cation to the Arizona Supreme Court. *Cf.* A.R.S. § 13–4022 (directing the appointment of experts and specific findings by the superior court for initial competency determination, and outlining method of appeal from superior court's ruling).

Respondents argue that the successive application provision of § 13–4024(C) cures any deficiency in the recovery statute. However, under Respondents' interpretation of Arizona's competency statute, a prisoner in Petitioner's position has very little time to invoke successive application procedures. To avoid having to establish good cause for an untimely application, a motion for a successive determination of competency must be filed no fewer than twenty days before the scheduled execution. A.R.S. § 13–4024(A). In addition, an untimely motion must include an affidavit from a licensed physician or psychologist "who has examined the prisoner" and who opines that the prisoner is not competent for execution. *Id.* Thus, once the Arizona Supreme Court issues a new warrant upon certification of recovered competency and sets the execution for thirty-five days later, the prisoner has only fifteen days to file a timely request for a successive competency determination. More importantly, to even qualify for a successive hearing (which, under Respondents' argument, is the only available procedure for challenging the chief medical officer's certification of competency), the prisoner must first obtain an affidavit from a state-licensed physician or psychologist who has examined him and which shows both a substantial change in circumstances since the certification of competency and a significant question about the prisoner's competency to be executed—all within fifteen days. A.R.S. § 13–4024(C). This is a heavy burden to carry, especially if, as in the instant matter, the state court refuses defense counsel's request for appointment of an expert to examine the prisoner.[5]

5. The record reflects that Petitioner is indigent and that counsel was appointed by the Pinal County Superior Court to represent him for competency proceedings. (S.C.R. doc. 98, M.E. 10/4/00 at 1). Following certification of competency by Dr. Dennis, Petitioner's counsel sought appointment of an investigator and mental health experts. The superior court denied the motions, and the Arizona Supreme Court dismissed Petitioner's appeal from that ruling. (S.C.R. doc. 98, M.E.10/4/00 at 2; doc. 102).

On its face, § 13–4024(C) requires a prisoner to produce an expert's affidavit simply to trigger a request for successive hearing. Nothing in the statute provides for pre-application assistance of mental health experts. Furthermore, it appears to the Court that A.R.S. § 13–4013 is of little assistance at this stage of a prisoner's capital proceedings. That statute provides for the appointment of investigators and expert witnesses which are reasonably necessary to present a capital defendant's defense at trial "and any subsequent proceeding." A.R.S. § 13–4013(B). However, in light of separate statutory provisions that provide for payment of counsel's fees on appeal, expert's fees for insanity hearings, investigative and expert resources in post-conviction proceedings, and appointment of experts in competency for execution hearings, it appears § 13–4013's "any subsequent proceeding" is limited to the sentencing phase of a capital case. Compare A.R.S. § 13–4013(A) (providing for payment of counsel's fees "in either a criminal proceeding or insanity hearing") with A.R.S. § 13–4041(A) (providing for payment of counsel's fees "in either a criminal proceeding or insanity hearing on appeal"). Compare also A.R.S. § 13–4014(A) (providing for payment of fees to experts appointed by the court "in the conduct of a sanity hearing before or during the trial of criminal action, or prior to pronouncing sentence"), with A.R.S. § 13–4041(J) (providing for payment of investigative and expert services "reasonably necessary" to adequately litigate post-conviction claims not precluded under § 13–4232), and with A.R.S. § 13–4022(C) (providing for appointment of experts upon showing "reasonable grounds" for examining prisoner's competency for execution).

The Court cannot agree with Respondents that due process has been afforded in this case simply because Petitioner's defense counsel attempted to discredit Dr. Dennis and to present contrary evidence by filing an opposition to the State's motion for warrant of execution—a motion even the State argued was unnecessary given the language of § 13–4023(B).[6] Nor is the Court persuaded that the availability of § 13–4024(C) cures the problem. The heightened requirements for successive motions in § 13–4024 may be appropriate for limiting false claims and deliberate delay. *See Ford,* 477 U.S. at 417, 106 S.Ct. at 2605 (Marshall, J.); *id.* at 429, 106 S Ct. at 2612 (O'Connor, J., concurring). But when, as here, a prisoner has established incompetency (by no less than clear and convincing evidence), the Due Process Clause requires, at a minimum, an opportunity to be heard and to present evidence without having to establish changed circumstances from the very competency determination the prisoner seeks to challenge.[7]

In *Ford,* Justice Powell summed up the deficiencies in Florida's pre-execution process as follows:

[T]he determination of petitioner's sanity appears to have been made *solely* on the basis of the examinations performed by state-appointed psychiatrists. Such a procedure invites arbitrariness and error by preventing the affected parties from offering contrary medical evidence or even from explaining the inadequacies of the State's examinations. It does not, therefore, comport with due process.

477 U.S. at 424, 106 S.Ct. at 2609 (emphasis in original). The issue of a prisoner's restored competency is entitled to at least the process due an initial determination of competency, and therefore the requirements established in *Ford* are applicable here. This Court is unable to distinguish the procedural flaws in *Ford* from the instant case. The Court therefore finds that Arizona's procedures are substantially inadequate to protect Petitioner's right to a fair redetermination of his competency. *Cf. Van Tran v. State,* 6 S.W.3d 257, 272–73 (Tenn.1999), *cert. denied,* 529 U.S. 1091, 120 S.Ct. 1728, 146 L.Ed.2d 648 (2000) ("Regardless of whether treatment is provided, some procedure must exist for reviewing the prisoner's case to determine whether he or she has regained competency;" requiring hearing upon claim of recovered competency; burden on State to establish that prisoner regained competency); Cal.Penal Code § 3704 (West 2000)

---

**6.** Even if the Arizona statute was construed in a manner to allow litigation in the Arizona Supreme Court regarding the issuance of an execution warrant in the wake of the state hospital's certification of competency, that court has made clear that it is not a factfinding body and is "ill-equipped" to consider "materials that are outside the record on appeal." *State v. Schackart,* 190 Ariz. 238, 247, 947 P.2d 315, 324 (1997). And when conducting independent review of capital sentences—arguably a factfinding function—the supreme court adheres to the rule that "the credibility of expert witnesses is for the trier of fact." *State v. Hoskins,* 199 Ariz. 127, 14 P.3d 997, 1019 (2000).

**7.** The Court observes that were § 13–4024(C) sufficient to cure the deficiencies in Arizona's

recovery statute, it could lead to aberrant results. The State would have every incentive to not contest a prisoner's initial claim of incompetency, thus avoiding a potentially lengthy and contentious evidentiary hearing. This would enable the State to have its own chief medical officer re-examine the prisoner, unilaterally declare the prisoner competent, let a warrant of execution issue, and then require the prisoner to meet the heightened standards necessary to qualify for a successive hearing before the superior court, with no guarantee that such a hearing (if granted) could be held in a meaningful way in the compressed time period created by a 35–day warrant.

(trial court shall schedule hearing to determine whether defendant has recovered competency); Ky.Rev.Stat.Ann § 431.2135(5) ("Upon receiving a report that a condemned person has become sane, the court shall schedule an evaluation and conduct a hearing...."); Miss. Code Ann. § 99–19–57(2)(a) (1999) (court shall conduct a hearing on sanity if state hospital claims defendant has regained sanity); Mont.Code Ann. § 46–19–202 (providing opportunity to request hearing on whether defendant regained fitness to be executed); Neb.Rev.Stat. § 29–2537 (providing for successive examination and investigation upon belief defendant has become mentally competent); N.Y. Correction Law § 656(6) (McKinney 2000) (same); and Wyo.Stat.Ann. § 7–13–903(b) (same). *Accord* Ariz.R.Crim.P. 11.6 (providing for a hearing to redetermine a defendant's competency to stand trial).

**B. Evidentiary Hearing**

■■■■ A habeas petitioner is entitled to an evidentiary hearing as a matter of right on a claim where the facts are disputed if two conditions are met: (1) the petitioner's allegations would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. *Jones v. Wood,* 114 F.3d 1002, 1010 (9th Cir.1997). The AEDPA affects the grant of evidentiary hearings only if a petitioner "failed to develop" the factual basis of a claim in state court. *See* 28 U.S.C. § 2254(e)(2).[8] In *Williams Mi-*

*chael v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000), the Supreme Court held that § 2254(e)(2) only precludes a hearing where there has been "[a] lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in failing to present the factual basis for the claim. "Diligence ... depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court...." *Id.,* 120 S.Ct. at 1490 (diligence requires, at a minimum, that the prisoner seek an evidentiary hearing in state court). A prisoner who has been diligent will be excused from § 2254(e)(2)'s stringent requirements. *Id.* at 1491.

After reviewing the procedures the Arizona Supreme Court utilized in redetermining that Petitioner was competent to be executed and finding that they failed to comport with the dictates of the Due Process Clause, the Court concludes that an evidentiary hearing is necessary to resolve the issue of Petitioner's competency for execution. The Arizona Supreme Court's order finding "all requisite standards" required for competency to be executed "fully satisfied" (S.C.R.doc. 102) was reached without providing Petitioner a full and fair hearing. Accordingly, Petitioner cannot be faulted for the failure to develop the factual basis of his incompetency claim in light of the state court's refusal to provide an opportunity to be heard with respect to Dr. Dennis's certification of competency.

---

**8.** 28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Furthermore, Petitioner's allegation of incompetency, if true, would entitle him to habeas relief.

Having found that Petitioner is entitled to a federal evidentiary hearing on his *Ford* claim, the Court will address Petitioner's motions for appointment of counsel, an investigator, an interpreter, and mental health experts as well as the request for discovery in a separate order following appellate review, if any, sought by Respondents of this Order.

### C. Procedural Defenses

In their opposition, Respondents raise two procedural defenses. First, Respondents argue that Petitioner waived any claim regarding his competency because he failed to seek a successive competency determination pursuant to A.R.S. § 13–4024(C). Alternatively, Respondents assert that Petitioner's claims are procedurally defaulted and/or unexhausted.

■ With respect to waiver, Respondents contend that Petitioner has an available state remedy under § 13–4024(C) because Petitioner's *Ford* claim "only became ripe when the Arizona Supreme Court issued the warrant of execution." (Response to Petition, at 9). Respondents further assert that waiver is established because "rather than joining in the State's motion [for a competency hearing], Amaya–Ruiz filed a motion to dismiss the States motion, arguing that the State's motion did not meet the standards of A.R.S. § 13–4024(C)." (*Id.*). Respondents also accuse Petitioner of attempting to forum shop to avoid an evidentiary hearing in state court and fault Petitioner for not attempting to provide an expert's affidavit concerning his alleged incompetency.

In light of this Court's finding that Arizona failed to provide Petitioner a meaningful opportunity to contest the State's finding of restored competency, it is diffi-

cult to question Petitioner's resort to relief in federal court. Petitioner sought a hearing in state court, and it was denied. The Court will not fault Petitioner for pursuing his constitutional right to a fair hearing and for declining to pursue a "remedy" that denies him the opportunity to directly contest Dr. Dennis's certification of competency and that places an additional burden of showing changed circumstances from the very finding Petitioner charged was invalid. Indeed, one could argue it is Respondents who are attempting to forum shop as they admit the State made no attempt to comply with § 13–4024(C) when filing the December 15 motion for a competency examination and only sought the hearing to ensure no "procedural problem and delays." (Response to Petition, at 9). The allegation concerning Petitioner's failure to find an expert who could file an affidavit under § 13–4024(C) is inconsequential considering that (1) Petitioner sought appointment of mental health experts and the state court, at Respondents' urging, denied the request; (2) it was the State, not Petitioner, who filed the motion for a successive competency determination and was thus obligated to produce the affidavit; and (3) Petitioner could hardly be expected to acquiesce to a procedure that, as Respondents point out, "would render moot his claims that the Arizona statutes are defective." (*Id.*).

■ As for ripeness, nothing in Arizona's competency scheme requires that a prisoner seek a competency hearing only after a warrant of execution issues. Rather, the process may be initiated any time "after a sentence of death is imposed" if the requesting party has good reason to believe the prisoner may be mentally incompetent to be executed. *See* A.R.S. § 13–4022(A). That process was invoked in this case by the State, long before the present warrant issued. The ripeness con-

cerns raised by Respondents are only of consequence to Article III federal courts, before whom a habeas petition challenging a petitioner's competency for execution under *Ford* becomes ripe after all appeals are extinguished and the State seeks to carry out the prisoner's sentence. *See Stewart v. Martinez–Villareal,* 523 U.S. at 643, 118 S.Ct. at 1621. The Court finds that Petitioner did not waive his *Ford* claim.

 ■  For the reasons already discussed, the Court finds no merit in Respondents' alternative procedural default and exhaustion arguments. Petitioner argued to the Arizona Supreme Court that he was not presently competent for execution and that the unavailability of procedures to challenge the State's redetermination of his competency violated his right to due process. That court determined that the state hospital's competency certification satisfied Arizona's standard for competency of execution, issued a warrant for Petitioner's execution, and declined to address Petitioner's constitutional argument. (S.C.R.doc. 102). It can hardly be said that Petitioner failed to exhaust these claims. Moreover, considering the Court's finding with respect to Arizona's procedures for redetermining competency, it appears "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant," 28 U.S.C. § 2254(b)(1)(B), thus negating any exhaustion requirement.

## IV. Stay of Execution

 ■  Congress has granted to federal courts "before whom a habeas corpus proceeding is pending" the authority to stay a state court action "for any matter involved in the habeas corpus proceeding." 28 U.S.C. § 2251. *See also Lonchar v. Thomas,* 517 U.S. 314, 320, 116 S.Ct. 1293, 1297, 134 L.Ed.2d 440 (1996) ("[I]f the

district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot."). As already noted, this Court unquestionably has jurisdiction in this matter. No competency issues are pending in any state forum, the Arizona Supreme Court has issued a warrant of execution, and Petitioner has filed a habeas petition pursuant to 28 U.S.C. § 2254 which raises a cognizable *Ford* claim.

 ■  While a federal court should strive to expedite consideration of habeas claims so as not to frustrate state proceedings, it is equally true that such consideration ought to be deliberate and thoughtful. "Where this opportunity is not afforded, '[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.'" *McFarland v. Scott,* 512 U.S. 849, 858, 114 S.Ct. 2568, 2573, 129 L.Ed.2d 666 (1994) (citing *Barefoot v. Estelle,* 463 U.S. 880, 889, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983)). Stays of execution to allow for review of a prisoner's competency-to-be-executed claim are not uncommon. *See, e.g., Ford v. Strickland,* 734 F.2d 538 (11th Cir.1984), *motion to vacate denied,* 467 U.S. 1220, 104 S.Ct. 3498, 82 L.Ed.2d 911 (1984); *Shaw v. Delo,* 762 F.Supp. 853, 855 (E.D.Mo.1991); *Martin v. Dugger,* 686 F.Supp. 1523 (S.D.Fla.1988). Indeed, in *Calderon v. United States District Court (Kelly),* the Ninth Circuit expressly recognized that a ripe *Ford* claim is due the same consideration as other issues raised in a first habeas petition:

> [A]stay of execution is inevitable. Kelly's claim of present incompetence to be executed became ripe and exhausted only in 1998. Under *Stewart v. Martinez– Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), Kelly's presentation of the *Ford* claim to the

district court is a first petition; under the AEDPA, this claim is clearly not time-barred; and under *Lonchar*, Kelly is therefore entitled to a stay.

163 F.3d 530, 536 (9th Cir.1998) (en banc), *cert. denied*, 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999).

Having determined that Petitioner is not only entitled to an evidentiary hearing but that one is required, the Court issues a stay of execution pending resolution of Petitioner's *Ford* claim.

### CONCLUSION

The Court finds that the State of Arizona failed to provide Petitioner a constitutionally adequate opportunity to be heard with respect to restoration of his competency. The Court further concludes that the State of Arizona inhibited Petitioner's ability to investigate and develop the facts to support his claim of incompetency. Consequently, the Court finds that Petitioner is entitled to a federal evidentiary hearing on the issue of his competency for execution and that a stay of execution is required to allow that hearing to be held in a meaningful manner.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Stay of Execution is **GRANTED.** The State of Arizona's Warrant of Execution for Jose Jacobo Amaya–Ruiz is stayed pending resolution of the incompetency claim raised in the Petition for Writ of Habeas Corpus.

**IT IS FURTHER ORDERED** that Petitioner remain in the custody of the Arizona Department of Corrections, pending further order of this Court.

**IT IS FURTHER ORDERED** that the Clerk of Court make immediate telephone notice of this Order to Terry Stewart, Director of the Arizona Department of Corrections; Janet Napolitano, Attorney General of the State of Arizona; Noel Dessaint, Clerk of the Supreme Court of Arizona; and Bennie Rollins, Warden of the Arizona State Penitentiary at Florence, and that a copy of this Order be served on these individuals by the United States Marshal forthwith.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing is **GRANTED.**

**IT IS FURTHER ORDERED** setting this matter for a pre-hearing status conference on February 22, 2001, at 9:30 AM in Courtroom 6A.