# In the
# Indiana Supreme Court

Norman TIMBERLAKE,                    )          Supreme Court Cause No.
    Petitioner,                     )          49S00-0606-SD-235
    v.                              )
                                    )          Marion Superior Court
STATE of Indiana,                     )          Case No. 49G02-9302-CF-014191
    Respondent.                     )

## ORDER STAYING EXECUTION OF DEATH SENTENCE

Norman Timberlake was sentenced to death for murdering Master Trooper Michael Greene, a law enforcement officer acting in the line of duty. We affirmed the conviction and sentence and subsequently affirmed the denial of post-conviction relief. His execution date is set for January 19, 2007. For the reasons explained below, Timberlake's request for a stay of the execution is granted.

On December 15, 2006, this Court denied Timberlake's request to file a successive petition for post-conviction relief. Timberlake v. State, 858 N.E.2d 625 (Ind. 2006) (hereinafter Timberlake V). In his request, Timberlake claimed that the execution of his death sentence "will violate the Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 13, 16 and 18 of the Indiana Constitution because he is severely mentally ill, insane and incompetent to be executed." Id. at 627-28 (internal quotation marks omitted) (footnotes omitted). We agreed that the Eighth Amendment prohibits a state from executing persons who are insane at the time of execution, but applied the standard for insanity adopted by Justice Powell's concurring opinion in Ford v. Wainwright, 477 U.S. 399 (1986); Id. at 628: persons are insane if they are "unaware of the punishment they are about to suffer and why they are to suffer it." Ford, 477 U.S. at 422 (Powell, J., concurring). We requested evaluation of Timberlake by George Parker, M.D., an independent psychiatrist. Dr. Parker reported that Timberlake suffered from "an active and severe form of a serious mental disease" and believed that a "machine" spoke to and tortured him. Dr. Parker noted that "Timberlake's thought content was significant for multiple paranoid delusional beliefs, centered on his conviction that he was being tortured by a computer-driven machine at the behest of prison officials," and that he "has essentially no insight into his mental illness, as he is absolutely convinced that he is not insane, that the machine is real and that he does not have any form of mental illness." Dr. Parker concluded that Timberlake was not malingering in his claims. Timberlake V, 858 N.E.2d at 629-30. Dr. Parker found that Timberlake understood that he is to be executed and why. Accordingly, Timberlake did not meet the Ford formulation of insanity and thus, in the view of a majority of this Court, was not entitled to file a successive petition for post-conviction relief. Id. at 630.

The Ford standard for insanity has never been squarely adopted by the U.S. Supreme Court. Justice O'Connor, speaking for a majority in Penry v. Lynaugh, 492 U.S. 302, 333 (1989), quoted Justice Powell's standard for insanity with approval, and most state and federal

courts have taken this as a definitive endorsement of the Powell insanity formulation by the majority of the Supreme Court.  But it is clear that Justice O'Connor's statement in Penry was dicta.  Penry dealt with mental retardation, not insanity.  Penry held that executions of mentally retarded persons were permissible, and Penry has since been overruled by Atkins v. Virginia, 536 U.S. 304 (2002).

A recent development suggests that the Supreme Court of the United States may soon revisit and address the application of the Eighth Amendment to claims that mental illness bars execution.  On January 5, 2007, the Supreme Court of the United States granted certiorari to the Court of Appeals for the Fifth Circuit in Panetti v. Dretke, 448 F.3d 815 (5th Cir. 2006).  Panetti v. Quarterman, 2007 WL 30552 (U.S. Jan 05, 2007).   The question presented to the United States Supreme Court in the petition for certiorari in Panetti is:

> Does the Eighth Amendment permit the execution of a death row inmate who has a factual awareness of the reason for his execution but who, because of a severe mental illness, has a delusional belief as to why the State is executing him, and thus does not appreciate that his execution is intended to seek retribution for his crime?

Panetti was convicted of murdering his wife's parents and was sentenced to death in a Texas state court.  He sought federal habeas corpus relief, contending that he was insane, and therefore could not be executed consistent with the Eighth Amendment to the Federal Constitution.  The district court found that Panetti believed that the State was "in league with the forces of evil to prevent him from preaching his Gospel" and that he is being "persecuted for his religious activities and beliefs." Panetti v. Dretke, 401 F. Supp. 2d 702, 707, 709 (W.D. Tex 2004).  The district court, nevertheless found Panetti competent to be executed because he knew he was to be executed for these murders under the Powell/Ford test.  Panetti appealed to the Fifth Circuit, arguing that "the Eighth Amendment forbids the execution of a prisoner who lacks a rational understanding of the State's reason for execution."  Panetti, 448 F.3d at 817-18.  He contended "his understanding is lacking in his case because he believes that, although the State's purported reason for the execution is his past crimes, the State's real motivation is to punish him for preaching the Gospel." Id. at 818.  The Fifth Circuit affirmed the denial of habeas relief, holding that "'awareness,' as that term is used in Ford, is not necessarily synonymous with 'rational understanding.'" Id. at 821.  The United States Supreme Court has now agreed to review that decision.  Its opinion may reconfirm or depart from the approach of Justice Powell in Ford. Presumably we may have a decision before the end of this Term of the Court in late June 2007.

Timberlake's situation is sufficiently similar to Panetti's that a stay of Timberlake's impending execution is appropriate.  As noted above, Timberlake has an understanding that he is being executed for killing Trooper Greene.  His is in many respects a more blameworthy crime than Panetti's.  Nonetheless, Dr. Parker reports that Timberlake suffers from a severe mental disease.  If the Supreme Court interprets the Eighth Amendment in a manner significantly different from Justice Powell's concurrence in Ford, Timberlake's execution may prove to be prohibited by the Eighth Amendment.  We grant a stay to prevent learning the answer to that question after it is too late.

2

The decision whether to grant a stay of Timberlake's execution pending the Supreme Court's decision in Panetti is a responsibility of this Court, not the federal courts. Timberlake's successive petition for federal habeas relief was filed before the Supreme Court granted certiorari in Panetti. Shortly after the grant of certiorari, the United States District Court for the Southern District of Indiana denied Timberlake relief. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if (1) the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent; (2) the state court decision was based on an unreasonable application of Supreme Court precedent; or (3) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2). The district court concluded that we had correctly identified Ford as the controlling Supreme Court precedent, our application of Ford was not objectively unreasonable, and the determination of the underlying facts on which we relied was entitled to deference under the AEDPA. Timberlake v. Buss, No. 1:06-cv-01841-RLY-TAB at 7 (S.D. Ind. January 9, 2007)

In its discussion of Ford, the district court noted that "[f]ederal and state courts generally agree that Justice Powell's concurring opinion sets forth the applicable constitutional standard." Id. at 4 (quoting Amaya-Ruiz v. Stewart, 136 F.Supp.2d 1014, 1021 (D. Ariz. 2001)). The district court acknowledged the grant of certiorari in Panetti but concluded that "[e]ven if Panetti succeeds in causing a change to the Ford criteria, and even if that change would favor Timberlake, the AEDPA will not permit this court to apply new law to that change, as contrasted with the law in effect on the date Timberlake V was issued, December 15, 2006." Id. at 9 n.3 (citing Yarborough v. Alavarado, 541 U.S. 652 (2004)). The district court thus viewed its hands as tied by AEDPA. We think the district court was correct in its ultimate conclusion that AEDPA precludes federal habeas relief for Timberlake. If so, the Seventh Circuit and the Supreme Court may also consider themselves constrained by AEDPA to deny relief.

AEDPA requires the federal courts to defer to state courts, but, unlike the federal courts, this Court is not subject to AEDPA. As a state court we are free to revisit our own decisions, subject only to restrictions imposed by state law. Under these circumstances this Court should grant a stay of execution pending the United States Supreme Court resolution of Panetti. If there is doubt as to the applicable legal precedent, we should be cautious in carrying out the death penalty. See Bottoson v. Moore, 824 So.2d 115, 117 (Fla. 2002) (Pariente, J., concurring) (granting stay of execution pending a determination of the applicability of the recent Ring v. Arizona, 536 U.S. 584 (2002)). We recognize that the United States Supreme Court may ultimately adopt the Powell/Ford formulation of the standard for insanity. And even if Panetti produces a reformulation of the Eighth Amendment standard, further proceedings for Timberlake may result in a finding that his mental illness does not prevent his execution. But there is also the possibility, which is not remote, that the Supreme Court will address the Eighth Amendment in a way that may have an effect on Timberlake's case. The potential harm in granting Timberlake a stay of execution and later finding out that the Supreme Court's decision in Panetti was inapplicable to Timberlake is minimal compared to the irreparable harm in denying the stay of execution, allowing Timberlake to be executed, and possibly learning a few months later that Timberlake's execution may have violated a new Supreme Court interpretation of the Eighth Amendment to prohibit execution of a class of mentally ill persons that included Timberlake. See Bottoson, 824 So.2d at 122. In short, until Panetti is decided and its effect on Timberlake's case can be determined, Timberlake's execution should be stayed. We hold consideration of

Timberlake's petition for rehearing in abeyance pending a decision in <u>Panetti</u>. The parties are to notify this Court by filing appropriate motions or notices when the United State Supreme Court has issued a decision.

The Clerk is directed to send a copy of this order to all counsel of record and to West Publishing for publication in the bound volumes of this Court's decisions..

Done at Indianapolis, Indiana, this 17th day of January, 2007.

/s/    Brent Dickson
Acting Chief Justice of Indiana

Dickson, Boehm, and Rucker, JJ., concur.
Shepard, C.J. dissents with opinion.
Sullivan, J., dissents with opinion, in which Shepard, C.J., joins.

**Shepard, Chief Justice, dissenting.**
In the fourteen years since Norman Timberlake murdered Master Trooper Michael Greene of the Indiana State Police, the American judicial system has entertained a succession of appeals – once before an Indiana trial court, three times to this Court, twice in United States District Court, once to the federal Court of Appeals, and three times to the United States Supreme Court.

All of this Due Process has led to the same conclusion: Timberlake is guilty and he received a fair trial and a penalty of death that complies with the law and the Constitution.

After all of this, a majority of this Court has decided to stop his execution. The basis for this decision rests exclusively on the possibility that the U.S. Supreme Court might decide to change its opinion defining insanity for death penalty purposes, <u>Ford v. Wainwright</u>, 477 U.S. 399 (1986).

They see this possibility in <u>Panetti v. Quarterman</u>, ---S. Ct. ---, 2007 WL 30552. There, a death row inmate and various amici curiae have insisted that the Fifth Circuit has not faithfully followed <u>Ford's</u> definition of insanity. That such a change in the <u>Ford</u> definition could occur in any way favorable to death row murderers, when Panetti's petition for certiorari asks the Court to re-affirm <u>Ford</u>, seems so implausible that granting a stay is unjustifiable.

In <u>this</u> case, all five members of this Court agreed that Timberlake is not insane as defined by <u>Ford</u>. <u>Timberlake v. State</u>, 858 N.E.2d 625 (Ind. 2006). All the evidence before us is evidence that has been deemed by multiple state and federal judges to demonstrate that Timberlake is competent and not insane under the only legal definition that exists. The video of Timberlake's parole interview last week, which I have watched, does not suggest he is insane under any other definition, either.

**Sullivan, Justice, dissenting**.
Norman Timberlake has asked this Court to stay his execution pending the decision of the

4

United States Supreme Court in <u>Panetti v. Quarterman</u>, <u>cert. granted</u>, 2007 U.S. LEXIS 18 (Jan. 5, 2007). In <u>Panetti</u>, the United States Supreme Court has been asked to decide whether its decision in <u>Ford v. Wainwright</u>, 477 U.S. 399, (1986), requires that Scott Louis Panetti, who has been sentenced to death, "rationally understand" the reason that he is to be executed or only that he be "aware" of the reason for his execution. <u>Panetti v. Dretke</u>, 448 F.3d 815, 819 (5th Cir. 2006), <u>cert. granted sub nom.</u> <u>Panetti v. Quarterman</u>, 2007 U.S. LEXIS 18.

I have voted to deny the requested stay because I do not believe the outcome of <u>Panetti</u> will affect this case because Timberlake rationally understands the reason he is being executed and so would not be entitled to relief even if the proposition advanced by Panetti prevails. On December 15, 2006, this Court denied Timberlake's request to initiate new post-conviction proceedings, holding that he was competent to be executed in accordance with the <u>Ford</u> standard. <u>Timberlake v. State</u>, 858 N.E.2d 625 (Ind. 2006). Our conclusion was based in part on the opinion of a psychiatrist, George F. Parker, M.D., appointed by this Court to conduct a psychiatric examination of Timberlake for purposes of rendering an opinion on his present mental status. Dr. Parker's opinion concluded, in part:

> It is my opinion, with reasonable medical certainty, that the defendant, despite his serious mental illness, does have the mental capacity to understand that he is about to be executed and to understand why he is to be executed.

<u>Id.</u> On the basis of this evidence, I conclude that Timberlake rationally understands the reason he is being executed.

Shepard, C.J., joins.

5